[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-15388
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 29, 2009
THOMAS K. KAHN
CLERK

Agency Nos. A095-246-717
A095-247-446

CHAYADIPURNAMA CIPTANAGARA,
SUSAN RAHARDJA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(May 29, 2009)

Before BLACK, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Chayadipurnama Ciptanagara and his wife, Susan Rahardja, natives and citizens of Indonesia, seek review of the Board of Immigration Appeals' (BIA's) decision affirming the Immigration Judge's (IJ's) denial of their applications for withholding of removal.[1] They assert the IJ and BIA erred in denying their applications for withholding of removal because they suffered past persecution in Indonesia on account of their Chinese ethnicity and Christian religion. Further, they contend their testimony describing past threats, intimidation, and damage to his business, along with country reports, demonstrated a clear probability of future persecution in Indonesia.

We review only the BIA's decision when the BIA issues a separate decision, "except to the extent that it expressly adopts the IJ's opinion." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." *Id.* Because the BIA issued its own decision but adopted the IJ's reasoning with respect to Ciptanagara's and Rahardja's withholding of removal claims, we review both decisions.

---

[1] On appeal, Ciptanagara and Rahardja concede they did not file timely asylum applications and do not meet the requirements for the exceptions to the one-year filing deadline. *See* 8 U.S.C. § 1158(a)(2)(D). Thus, they do not appeal the denial of their asylum applications.
Further, Ciptanagara and Rahardja do not challenge the denial of relief under the United Nations Convention Against Torture and Other Cruel, Inhumane, or Degrading Treatment or Punishment (CAT), 8 C.F.R. § 208.16(c). Accordingly, they have abandoned the claim by failing to raise it in their brief. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

We review the BIA's legal conclusions *de novo*, and the BIA's and IJ's factual findings under the substantial evidence test. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005); *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc); *Mohammed v. Ashcroft*, 261 F.3d 1244, 1247 (11th Cir. 2001). Under the substantial evidence test, we "affirm the . . . decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Al Najjar*, 257 F.3d at 1283-84 (citation omitted). The substantial evidence test is "deferential" and does not allow "re-weigh[ing] the evidence from scratch." *Mazariegos v. U.S. Att'y Gen.*, 241 F.3d 1320, 1323 (11th Cir. 2001). "To reverse . . . fact findings, we must find that the record not only supports reversal, but compels it." *Mendoza*, 327 F.3d 1283, 1287 (11th Cir. 2003). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi*, 386 F.3d at 1027.

To obtain withholding of removal, an alien must establish that his "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "The alien bears the burden of demonstrating that it is 'more likely than not' [he] will be persecuted or tortured upon being returned to [his] country." *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006)

3

(quoting *Sepulveda*, 401 F.3d at 1232). "[P]ersecution is an extreme concept requiring more than a few isolated incidents of verbal harassment or intimidation . . . [m]ere harassment is not persecution." *Ruiz v. Gonzales*, 479 F.3d 762, 766 (11th Cir. 2007) (quotations omitted). Withholding of removal protects against persecution by government forces and non-governmental groups that the government cannot control. *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437 (11th Cir. 2004). However, general civil strife does not create eligibility for relief, even if the applicant's life is clearly threatened, unless the applicant proves the relationship between his fear of harm and a statutorily enumerated ground. *Perlera-Escobar v. Executive Office for Immigration*, 894 F.2d 1292, 1297-99 (11th Cir. 1990). The standard for withholding of removal "is more stringent than the 'well-founded fear of future persecution' required for asylum." *Tan*, 446 F.3d at 1375.

An alien may satisfy his burden of proof for withholding of removal in two ways. First, an alien may establish past persecution based on a protected ground. *Id.* Past persecution creates a rebuttable presumption that he has a well-founded fear of future persecution and shifts the burden to the Department of Homeland Security to show changed conditions in the country or the ability to avoid a future threat through relocation. *Id.* Second, an alien may establish that it is more likely than not that he would be persecuted upon removal due to race, religion, or

4

nationality. *Id.* "'An alien cannot demonstrate that [he] more-likely-than-not would be persecuted on a protected ground if the [BIA] finds that the alien could avoid a future threat by relocating to another part of [his] country.'" *Id.* (quoting *Mendoza*, 327 F.3d at 1287). Evidence that an alien's family continues to reside unharmed in a country supports a conclusion that a threat may be avoided by relocation. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1259 (11th Cir. 2006).

Substantial evidence supports the IJ's and BIA's decision affirming the denial of Ciptanagara's and Rahardja's applications for withholding of removal. First, although Ciptanagara and Rahardja briefly mention on appeal that they suffered past persecution and generally argue the IJ erred in finding they were not eligible for withholding of removal, they do not challenge the IJ's finding the incidents described by them did not constitute past persecution. By not offering an argument on this issue, Ciptanagara and Rahardja have waived it on appeal. *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (holding a passing reference to an issue in a brief is insufficient to properly raise that issue). Even assuming Ciptanagara and Rahardja properly preserved this issue, the incidents described by them, including damage to the furniture store in 1998, robberies, harassment, and police intimidation, do not compel a finding that they suffered past persecution. *Compare Ruiz*, 479 F.3d at 766 (holding beatings, kidnaping, and threatening phone calls constituted persecution) and

5

*Perlera-Escobar*, 894 F.2d at 1297-99 (requiring examination of the motivation of groups threatening an alien in the context of civil wars where general conditions of violence exist).

Second, substantial evidence supports the IJ's conclusion that Ciptanagara and Rahardja did not establish they would more likely than not suffer future persecution on account of their ethnicity or religion. Ciptanagara testified that after the May 1998 riots he traveled to Singapore, but did not seek protection from the government in Singapore and even returned to Indonesia. He did not come to the United States until April 1999, almost one year after the riots. The evidence also supports the IJ's finding Ciptanagara likely came to the United States as an economic refugee, because he started working within one month of his arrival and did not apply for asylum until almost four years after his arrival.

Likewise, the record does not compel reversal of the BIA's determination that, if a threat of persecution existed at all, Ciptanagara and Rahardja failed to demonstrate the threat was throughout Indonesia. The 2006 Country Report and 2002 Immigration Report both acknowledged that conditions for ethnic Chinese have continued to improve since 1998. The 2002 Immigration Report indicated that ethnic Chinese had not been targeted in eastern Indonesia. Also, the 2006 Country Report indicated that Catholicism was an officially recognized religion in

6

Indonesia. Additionally, Ciptanagara's and Rahardja's families continue to reside in Indonesia, and the last reported incident occurred in 2002.

Accordingly, we deny Ciptanagara's and Rahardja's petition with respect to their withholding of removal claims.

**PETITION DENIED.**